UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDEN GATE WAY, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ENERCON SERVICES, INC., et al.,<br><br>    Defendants. | Case No. 20-cv-03077-EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO STRIKE ENERCON'S ANSWER/COUNTERCLAIM, AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS ERM'S COUNTERCLAIMS**<br><br>Docket Nos. 27, 28 |

    Plaintiff Golden Gate Way, LLC ("GGW") has filed suit against two companies: (1) Enercon Services, Inc. and (2) ERM-West, Inc. ("ERM"). According to GGW, it owns certain property on which a dry cleaner operated between 1956 and 1999. After a California Regional Water Quality Control Board required GGW to investigate contamination at and around the property, GGW hired Enercon (in 2008) and later ERM (in 2009), both environmental consulting companies. *See* Compl. ¶¶ 9, 11. GGW alleges that, during each company's work for GGW, the company took action that resulted in the release, escape, and/or movement of contamination, resulting in the spread of contamination.[1] *See* Compl. ¶¶ 13-26.

    Enercon and ERM have answered GGW's complaint and asserted counterclaims as well. Currently pending before the Court are two motions filed by GGW: one directed at Enercon's answer/counterclaims and the other directed by ERM's counterclaims.

---

[1] Apparently, back in 2009, GGW filed two cases related to the same property but against different defendants, *i.e.*, the former operators of the dry cleaning business and prior owners of the property. *See, e.g.*, Enercon Countercl. ¶ 23 (citing *Golden Gate Way, LLC v. Stewart*, No. C-09-4458 DMR (N.D. Cal.)); ERM Countercl. ¶ 23 (citing the same case as well as one in state court, *Golden Gate Way v. Monroe*, No. CIVMSC16-00775 (Contra Costa County Superior Court)).

## I.   FACTUAL & PROCEDURAL BACKGROUND

In its complaint, GGW asserts the following causes of action:

(1) Cost recovery pursuant to CERCLA § 107(a).  *See* 42 U.S.C. § 9607.

(2) Contribution pursuant to CERCLA § 113(f).  *See id.* § 9613(f).

(3) Indemnification and contribution pursuant to the California Carpenter-Presley-Tanner Hazardous Substance Account Act.

(4) Continuing private nuisance.

(5) Continuing public nuisance.

(6) Continuing trespass.

(7) Declaratory relief – in particular, "a judicial determination of Plaintiff's rights, indemnification, and contribution, any declaration that Defendants and/or others, and not Plaintiff, are liable for all damages, as well as the costs incurred, and to be incurred to remove, cleanup and remediate the alleged hazardous substance contamination of the soil, soil gas and groundwater at and around the Subject Property."  Compl. ¶ 103.

(8) Implied indemnity and/or contribution.

(9) Negligence.

As noted above, Enercon and ERM have each responded to GGW's complaint with an answer and counterclaims.  GGW has now filed two motions in response, one challenging Enercon's pleading and the other challenging ERM's.

## II.   MOTION TO STRIKE (ENERCON)

In its pleading, Enercon asserts the following counterclaims:

(1) Contribution under CERCLA § 113(f).  *See* 42 U.S.C. § 9613(f).

(2) Declaratory judgment pursuant to CERCLA § 113(g), *see id.* § 9613(g) – *i.e.*, "establishing the liability of Golden Gate Way under 42 U.S.C. § 9607(a) and the respective equitable shares of Golden Gate Way and ENERCON for cost of response."  Enercon Countercl. ¶ 48.

(3) Common law contribution.

2

1    (4) Declaratory relief – *i.e.*, related to a controversy about "the liability and responsibility of the parties for the harm caused by the release(s) of PCE at the Subject Property and the resulting contamination." Compl. ¶ 53.

In its motion, GGW does not move to strike any of Enercon's counterclaims per se. However, it does move to strike certain allegations made in support of the counterclaims. Those allegations relate to a limitation-of-liability provision contained in the parties' contract. For example:

- "[GGW] entered into a contract with ENERCON for a Limited Phase II Site Investigation at the Subject Property. The contract contains a limitation of liability provision that covers any claims based on contract, negligence or strict liability relating to the work performed by ENERCON. In exchange for ENERCON performing the work and other considerations, Golden Gate Way agreed that ENERCON's total liability would be the total amount Golden Gate Way paid to ENERCON." Enercon Countercl. ¶ 43; *see also* Enercon Countercl. ¶¶ 44-46 (making related allegations).

GGW also moves to strike an affirmative defense asserted in Enercon's answer. That defense also relates to the limitation-of-liability provision. More specifically, the twelfth affirmative defense provides as follows: "If Plaintiff establishes the liability of ENERCON, Plaintiff's total recovery from ENERCON in this case is limited to $14,939.80 by the enforceable limitation of liability provision in the contract between Plaintiff and ENERCON." Ans. ¶ 132 (twelfth affirmative defense).

A.  Legal Standard

> Under [Federal] Rule [of Civil Procedure] 12(f), "[a] court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). Motions to strike are generally disfavored. *See Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010); *see also Platte Anchor Bolt, Inc. v.*

3

>*IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (stating that, "[i]f there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion").

*Colopy v. Uber Techs., Inc.*, No. 19-cv-06462-EMC, 2020 U.S. Dist. LEXIS 114213, at *5 (N.D. Cal. June 30, 2020).

### B.  Twelfth Affirmative Defense

GGW argues that the twelfth affirmative defense should be stricken as insufficient because it is time barred.  GGW agrees with Enercon that the contract at issue was entered into in September 2008 and that Enercon completed its work in November 2008.  *See* Enercon Countercl. ¶¶ 14-15.  That being the case, GGW argues that Enercon had only four years thereafter to rely on any provision in the contract.  *See* Mot. at 3 (citing California Code of Civil Procedure § 337, which provides for a four-year limitations period for claims based on a written contract).

GGW's argument is meritless.  Section 337 provides for a four-year limitations period for "[a]n *action* upon any contract . . . founded upon an instrument in writing."  Cal. Code Civ. Proc. § 337 (emphasis added).  A cause of action is not the same thing as an affirmative defense.  "To use the statute of limitations to cut off the consideration of a particular defense in the case is quite foreign to the policy of preventing the commencement of stale litigation."  *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 72 (1956).  Indeed, in *City of St. Paul v. Evans*, 344 F.3d 1029 (9th Cir. 2003), the Ninth Circuit noted that "courts generally allow defendants to raise defenses that, if raised as claims, would be time-barred"; there is a "difference between seeking affirmative recovery and having 'adjudicated questions raised by way of defense.'"  *Id.* at 1033-34.  California authority is in accord.  *See Styne v. Stevens*, 26 Cal. 4th 42, 51 (2001) (stating that "a defense may be raised at any time, even if the matter alleged would be barred by a statute of limitations if asserted as the basis for affirmative relief"; thus, *e.g.*, "[o]ne sued on a contract may urge defenses that render the contract unenforceable, even if the same matters, alleged as grounds for restitution after rescission, would be untimely").

### C.  Counterclaim Allegations

As for the counterclaim allegations (all related to the limitation-of-liability provision), the analysis is somewhat different.  As an initial matter, the Court notes that, technically, GGW is not

4

arguing that any particular *counterclaim* should be *dismissed* because it is time barred; rather, GGW is asking only that certain *allegations* in the counterclaim be *stricken*.[2] But such allegations should not be stricken unless they are, *e.g.*, irrelevant to the counterclaims, and GGW has not made any argument that the allegations are irrelevant.

Indeed, even if the Court were to consider only the CERCLA contribution counterclaim, the allegations at issue are clearly relevant. "'In resolving contribution claims, [a] court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.' § 9613(f)(1). CERCLA does not limit the equitable factors a court may consider." *AmeriPride Servs. v. Tex. E. Overseas, Inc.*, 782 F.3d 474, 480 (9th Cir. 2015); *see also Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1187 (9th Cir. 2000) (noting that CERCLA "gives district courts discretion to decide what factors ought to be considered, as well as the duty to allocate costs according to those factors"). Thus, courts have "consider[ed] parties' contracts and *indemnification agreements* as factors affecting the equitable allocation of response costs." *Cadillac Fairview/Cal. v. Dow Chem. Co.*, 299 F.3d 1019, 1028 (9th Cir. 2002) (emphasis added); *cf. Beazer East, Inc. v. Mead Corp.*, 412 F.3d 429, 447 (3d Cir. 2005) (stating that "there is no basis in CERCLA's text or history for prioritizing *a priori* the parties' relative contributions of waste over their contractual intent to allocate environmental liability among themselves").

Even if GGW contends that an actual *counterclaim* should be time barred and therefore *dismissed*, its position still lacks merit. It is true that, in *Evans* – where the Ninth Circuit made the point that defenses are generally not subject to a statute-of-limitations defense – the court also noted: "It is important that the party asserting the defense is not, simultaneously or in parallel litigation, seeking *affirmative recovery* on an identical claim." *Evans*, 344 F.3d at 1035 (emphasis added). But this statement in *Evans* should not be taken out of context; *Evans* also stated that "whether affirmative defenses are exempt from statutes of limitations largely hinges on a realistic assessment of the parties' litigation posture." *Evans*, 344 F.3d at 1035. Thus, for example, even a

---

[2] Admittedly, GGW does make some statements in its papers that, *e.g.*, "Enercon cannot raise contractual claims *or* defenses" based on a time bar, Mot. at 3 (emphasis added); but technically GGW has not moved to dismiss any claims for relief. Rather, GGW has filed only a motion to strike.

5

*declaratory judgment* plaintiff's claims can be subject to the statute of limitations if the declaratory judgment plaintiff is more of an "aggressor" than the declaratory judgment defendant. *Id.* (In a declaratory judgment case, the nominal plaintiff is usually the "true" defendant, and the nominal defendant is usually the "true" plaintiff.)

Here, there is no real dispute that GGW is the aggressor, having initiated this lawsuit in the first place; Enercon brought its counterclaims only in response to GGW's suit and thus, under the circumstances, the counterclaims are more akin to defenses than affirmative claims for relief. There was no reason for Enercon to bring this counterclaim absent initiation by GGW of its suit. Hence, there is no basis to apply the statute of limitations.

GGW additionally contends that the limitation-of-liability provision cannot be interpreted as surviving and certainly not so indefinitely. But that is a contract interpretation question which is informed at least in part by the parties' intent, which cannot be resolved at the 12(b)(6) phase. In other words, even in the absence of a survival clause in the contract, a limitation-of-liability provision is the kind of clause that would naturally survive the completion of a contract. *Cf. Music Grp. Macao Commer. Offshore, Ltd. v. Foote*, No. 14-cv-03078-JSC, 2015 U.S. Dist. LEXIS 81415, at *44-45 (N.D. Cal. June 22, 2015) (rejecting defendant's argument that "Plaintiff was obligated to make a claim for indemnification against Defendant during the term of the Agreement [because] there is no language in the indemnification provision stating that it would continue post-termination, while such language appears in other clauses"); *see also* Opp'n at 6 (arguing that, "[b]ased on the plain language of the limitation of liability provision in the Contract, it would apply at any time Golden Gate Way made a claim for injury, damage or loss against ENERCON"; also arguing that "Golden Gate Way's agreement with ENERCON to allocate risks associated with the project by the limitation of liability does not terminate because Golden Gate Way waited 12 years to sue ENERCON.").

### III.     MOTION TO DISMISS OR STRIKE (ERM)

As against ERM, GGW has filed a motion to dismiss or strike. ERM asserts the following counterclaims in its pleading:

(1) Contribution pursuant to CERCLA § 113(f). *See* 42 U.S.C. § 9613(f).

1    (2) Express contractual indemnity.

2    (3) Equitable and implied indemnity and contribution.

3    (4) Declaratory relief – including that (a) GGW "is solely and entirely liable for future compliance with [the state agency's order] and all other local, state, and/or federal regulatory laws and authorities, and for all future costs of environmental response actions related to the Subject Property" and (b) "[t]he General Terms of the Initial Agreement between ERM and GGW . . . limit ERM's potential liability in this matter." ERM Countercl. ¶ 47.

The factual allegations supporting the counterclaims are as follows.

A dry cleaning business operated on the property at issue from approximately 1956 to 1999. *See* ERM Countercl. ¶ 12. "GGW and/or one or more Roes has owned the Subject Property since 1987." ERM Countercl. ¶ 14.

GGW and/or the Roes did not perform environmental-related due diligence prior to purchasing the property. In 2008, GGW and/or the Roes "became aware of extensive PCE contamination on the property." ERM Countercl. ¶ 15. GGW and/or the Roes then hired Enercon "to conduct initial subsurface investigations." ERM Countercl. ¶ 16. Enercon reported that there was "massive . . . contamination." ERM Countercl. ¶ 16. In February 2009, the state agency included the property "in its Site Cleanup Program. ERM Countercl. ¶ 17.

Also in February 2009, GGW and/or the Roes hired ERM "to perform a scope of work associated with various environmental response actions at the Site." ERM Countercl. ¶ 18. The contract between the parties contained at least two indemnification provisions:

- Section 8.2: "'Client shall indemnify ERM, its affiliates and their respective directors, officers, employees and contractors (individually, an 'ERM Indemnitee' and collectively, 'ERM Indemnitees') from and against all Damages arising out of the Contract, to the extent Damages are caused by the negligence or willful misconduct of Client.'" ERM Countercl. ¶ 20.

- Section 8.3: "'Client shall indemnify and defend ERM Indemnitees from all Damages sustained in connection with a Pre-Existing Condition except to the

7

extent the Pre-Existing Condition is exacerbated by the negligence or willful misconduct of an ERM Indemnitee.'" ERM Countercl. ¶ 20.

These sections were expressly identified as provisions that would survive expiration or termination of the contract. *See* ERM Countercl. ¶ 20 (noting that § 17.5 provides: "'Sections . . . 8, 9 . . . and all provisions of the Contract that by their nature would usually be construed to survive an expiration or termination shall survive the expiration or termination of the Contract'").

In March 2015, GGW and/or the Roes terminated the agreement with ERM. *See* ERM Countercl. ¶ 26.

Since March 2015, GGW and/or the Roes

> negligently and/or willfully performed or allowed to be performed the following related to the Subject Property and related environmental response actions . . . : (a) delaying Response Actions, including being significantly late; (b) failing to meet RWQCB [the state agency] Response Actions deadlines; (c) soliciting avoidable extensions for RWQCB Response Action deadlines; (d) failing to timely fill data gaps; (e) failing to comply with the National Contingency Plan; (f) allowing further significant migration of wastes or hazardous substances through subsurface transport to waters of the State; (g) allowing further vapor migration of VOC; and/or (h) inadequately supervising, directing, and/or funding its consultant Pangea who was supposed to be timely performing the Response Actions for GGW (collectively "Failures").

ERM Countercl. ¶ 27. As indicated by the above, the "Failures" all occurred post-March 2015. According to ERM, "[a]s a result of [the] Failures, GGW and/or one or more Roes has caused and continues to cause ERM damages as defined in the Initial Agreement . . . , specifically including claims, suit, reasonable attorneys' fees, consultant time, and other costs." ERM Countercl. ¶ 29.

In the pending motion, GGW seeks to dismiss the two indemnification counterclaims (express and implied) and to strike allegations related thereto. GGW also seeks to strike alter ego allegations made in support of the counterclaims.[3]

A. <u>Legal Standard</u>

The legal standard for a motion to strike has already been provided above.

---

[3] In opposing GGW's motion, ERM filed a request for judicial notice. GGW has opposed the judicial notice, and ERM has filed a brief responding to the objection. As a practical matter, the Court need not rule on the objection to the request for judicial notice. The Court does not rely on any of the documents in resolving GGW's motion to dismiss and/or strike.

1    Regarding a motion to dismiss, Federal Rule of Civil Procedure 8(a)(2) requires a
2 complaint to include "a short and plain statement of the claim showing that the pleader is entitled
3 to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed
4 pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome
5 a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556
6 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual
7 allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of
8 success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual
9 allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the
10 nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.
11 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action
12 [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the
13 opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks
14 omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the
15 court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
16 *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it
17 asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal
18 quotation marks omitted).

B.   Second Counterclaim: Express Contractual Indemnity

ERM's second counterclaim is one for express contractual indemnity. As noted above, ERM alleges that there are two relevant indemnification provisions in the parties' contract (both expressly subject to a survival clause):

- Section 8.2: "'Client shall indemnify ERM, its affiliates and their respective directors, officers, employees and contractors (individually, an 'ERM Indemnitee' and collectively, 'ERM Indemnitees') from and against all Damages arising out of the Contract, to the extent Damages are caused by the negligence or willful misconduct of Client.'" ERM Countercl. ¶ 20.
- Section 8.3: "'Client shall indemnify and defend ERM Indemnitees from all

9

> Damages sustained in connection with a Pre-Existing Condition except to the extent the Pre-Existing Condition is exacerbated by the negligence or willful misconduct of an ERM Indemnitee.'" ERM Countercl. ¶ 20.

GGW moves to strike the counterclaim for express indemnification as well as allegations related thereto. GGW breaks ERM's counterclaim into two parts: (1) a claim by ERM that it is not liable for any pre-existing condition, *see* ERM Countercl. ¶ 20, and (2) a claim by ERM that it is not liable for GGW's "Failures" which took place after the contract was terminated in March 2015.

### 1. Pre-Existing Condition

As to the counterclaim based on a pre-existing condition, GGW argues that it is barred by the statute of limitations (four years). *See* Mot. at 5 (citing California Code of Civil Procedure § 337). According to GGW, ERM knew at the time it entered the contract with GGW that there were pre-existing conditions; therefore, ERM should have filed its counterclaim within four years after contract termination (which occurred in 2015). GGW acknowledges the survival clause in the contract but argues that this does not mean that "the statute of limitations on pre-existing claims would be extended indefinitely." Mot. at 6. GGW adds that ERM cannot characterize its counterclaim as being responsive to GGW's complaint because GGW's complaint is not about pre-existing conditions – rather, the complaint is that "ERM exacerbated the contamination through its own conduct" while it was working for GGW. Mot. at 6.

GGW's arguments here is rejected for reasons similar to those above. That is, the aggressor in the case is GGW, not ERM; thus, ERM's counterclaim is more in the nature of a defense rather than an affirmative claim – which means that the counterclaim is not subject to a time bar. There was little reason to bring the counterclaim absent GGW's suit. GGW's argument that ERM's counterclaim is not responsive to its complaint is misplaced. The counterclaim is, in effect, a claim that ERM did *not* exacerbate the contamination, as GGW asserts in its complaint – thus, the contamination on site was a pre-existing condition (which GGW failed to control).

Furthermore, the contract between GGW and ERM (unlike the contract between GGW and Enercon) had an express survival clause which covered the indemnification provisions. Although

GGW protests that an express survival clause does not *necessarily* nullify a statute of limitations, its effect on a time bar is a question of interpretation informed in part by the parties' intent that should not be resolved at the 12(b)(6) phase.

Finally, even if ERM's counterclaim were subject to a statute of limitations, ERM fairly raises the issue of *when* the limitations period starts to run. Typically, a claim for indemnity accrues when the indemnity claimant suffers loss or damage – *e.g.*, when it has to pay the underlying claim. *Cf. Jocer Enters., Inc. v. Price*, 183 Cal. App. 4th 559, 574 (2010) (stating that, "[o]rdinarily, for purposes of limitations periods, claims for equitable indemnity and implied contractual indemnity accrue 'at the time the indemnity claimant suffers loss or damage – that is, at the time of payment of the underlying claim'"); *see also Postley v. Harvey*, 153 Cal. App. 3d 280, 284-85 (1984). Here, it does not appear that ERM has had to pay anything yet; if so, then the statute of limitations would not have started running.

As a final point, the Court acknowledges that, in its reply brief, GGW suggests for the first time that ERM cannot even claim indemnity for a pre-existing condition based on § 8.3. According to GGW, § 8.3 applies only in the situation where "a third-party claim is made." Reply at 4-5. But the Court does not entertain this particular argument because, as GGW admits in its reply brief, this specific argument was not put "at issue in [its opening] motion." Reply at 4. Even if GGW had made the argument, § 8.3 could plausibly be interpreted as being applicable to the situation at hand. Nothing on the face of the provision indicates that ERM can seek indemnity from GGW only when a claim is being made against ERM by a third party (as opposed to GGW itself). *See* ERM Countercl., Ex. 1 (Agmt. § 8.3) ("No ERM Indemnitee will be liable to a Client Indemnitee or any third party for the creation, existence or release of any type hazardous or toxic waste, material, chemical, compound or substance, or any other type of environmental hazard, contamination or pollution, whether latent or patent, or the violation of any law or regulation relating thereto, existing at a site prior to commencement of the Services ('Pre-Existing Condition'), and Client shall indemnify and defend ERM Indemnitees from all Damages sustained in connection with a Pre-Existing Condition except to the extent the Pre-Existing Condition is exacerbated by the negligence or willful misconduct of an ERM Indemnitee.").

2. <u>Post-March 2015 Conduct</u>

As to the second part of the counterclaim, GGW points out that ERM is trying to hold GGW accountable for alleged "Failures" which took place *after* GGW terminated its contract with ERM in March 2015. According to GGW, it cannot be held liable for conduct "after the Subject Agreement was terminated in 2015. By its terms, any such conduct . . . does not *arise out of the contract*." Mot. at 2 (emphasis added). GGW underscores that the indemnification provision in § 8.2 states that "Client shall indemnify ERM . . . from and against all Damages *arising out of the Contract*, to the extent Damages are caused by the negligence or willful misconduct of Client." ERM Countercl., Ex. 1 (Agmt. § 8.2) (emphasis added).

The Court rejects GGW's argument. Notably, § 8.2 does not refer to indemnity for *conduct* arising out of the contract, as GGW suggests, but rather refers to indemnity for "*Damages* arising out of the contract" (emphasis added). "Damages" is defined in the contract to mean, *inter alia*, "liability" and "claims." *See* ERM Countercl., Ex. 1 (Agmt. § 8.1) (defining "Damages" as "all liability, claims, suits, losses, damages and costs, including reasonable attorney's fees"). Therefore, arguably, § 8.2 could be interpreted to mean that GGW has to indemnify ERM if claims are made arising out of the work that ERM did for GGW – but only to the extent that the claims were caused by GGW's negligence or willful misconduct. Under such construction, § 8.2 could well come into play.

To the extent GGW argues that its negligence or willful misconduct must have taken place *during* the time that ERM did work for GGW (and not post-termination of contract), ERM does allege that GGW failed to take necessary action *during* the time that ERM was doing work for GGW and then, after the contract was terminated, *continued to do nothing* or at least did not do enough. *See* Countercl. ¶ 28 (alleging that "GGW and/or one or more Roes had the authority to control the cause of the contamination, including the Failures, at the time the hazardous substances were released and/or further released into the environment"). Thus, according to ERM, GGW

> negligently and/or willfully performed or allowed to be performed the following related to the Subject Property and related environmental response actions . . . : (a) delaying Response Actions, including being significantly late; (b) failing to meet RWQCB [the state agency] Response Actions deadlines; (c) soliciting avoidable

> extensions for RWQCB Response Action deadlines; (d) failing to timely fill data gaps; (e) failing to comply with the National Contingency Plan; (f) allowing further significant migration of wastes or hazardous substances through subsurface transport to waters of the State; (g) allowing further vapor migration of VOC; and/or (h) inadequately supervising, directing, and/or funding its consultant Pangea who was supposed to be timely performing the Response Actions for GGW (collectively "Failures").

ERM Countercl. ¶ 27. Whether § 8.2 applies to a continuation of negligent conduct that started during the course of ERM's work for GGW is a matter of contract construction that cannot be resolved on this 12(b)(6) motion.

GGW protests still that any assertion of negligence or willful conduct on its part (in ¶ 27) is not sufficiently pled – *i.e.*, the allegations are too conclusory. *See* Mot. at 7. But ¶ 27 above is sufficiently specific to survive the 12(b)(6) challenge.

C.   <u>Third Counterclaim: Equitable and Implied Indemnity and Contribution</u>

In its counterclaims, ERM brings not only an express indemnity claim but also an equitable/implied indemnity claim. GGW challenges the equitable/implied indemnity claim – as well as allegations related thereto – on the same grounds that it challenges the express indemnity claim. The same reasoning above applies here.

GGW does bring one additional argument in contesting the equitable/implied indemnity claim. More specifically, GGW argues that the claim should be dismissed based on ripeness grounds; according to GGW, the indemnity claim is not ripe because "ERM has not and cannot allege that it has incurred actual damages for a payment on an underlying claim or judgment." Mot. at 8.

Under the ripeness doctrine, "a federal court normally ought not resolve issues involving contingent future events that may not occur as anticipated, or indeed may not occur at all." *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572-73 (9th Cir. 1996) (internal quotation marks omitted). But the contingency here is not enough to render the indemnity claim unripe. The controversy is concrete and the potential liability of ERM is sufficiently imminent given GGW's suit. *Cf., e.g.*, *Hecht v. Summerlin Life & Health Ins. Co.*, 536 F. Supp. 2d 1236, 1240-43 (D. Nev. 2008) (noting that, "[a]lthough contingent on a finding that Summerlin Life is liable to Hecht, Summerlin Life's contribution and indemnification claims [against a third party] are sufficiently concrete to support

a finding of ripeness"); *Siebert v. Gene Sec. Network*, No. 11-cv-01987-JST, 2013 U.S. Dist. LEXIS 149145, at *10 (N.D. Cal. Oct. 16, 2013) (noting that "[f]ederal courts in this Circuit that have faced that question have concluded either that indemnity and contribution claims are ripe, or that the contribution and indemnity claims are properly brought but should be stayed pending resolution of the underlying claim on which the those claims are based").

D.   Alter Ego Allegations

GGW asserts next that certain allegations in the counterclaims should be stricken – in particular, those related to an alter ego theory of liability. GGW contends that any claim of alter ego liability is too conclusorily pled.

The Court agrees with GGW. The counterclaims, as pled, reference alter ego liability in one paragraph only:

> Further, ERM alleges that as between GGW and one or more Roes, there exists, and at all times relevant to this action there existed, a unity of interest and ownership among GGW and such Roes so as to make them an alter ego of each other. On information and belief, GGW was and is deliberately undercapitalized, and was created in an improper attempt to shield its predecessors and others from liability. On information and belief, adherence to the separate existence of GGW and such Roes would permit an abuse of the corporate privilege and would promote injustice, in that it would potentially provide a vehicle for GGW and/or such Roes to escape rightful liability.

ERM Countercl. ¶ 8. Nothing in the counterclaims provides any factual basis for the assertion that GGW was undercapitalized; similarly, nothing in the counterclaims suggests that it would promote injustice to allow GGW to be a shield for predecessors.

The Court, however, allows ERM to amend the counterclaims to address the deficient alter ego allegations. In this regard, the Court acknowledges that ERM does provide some information in support of its alter ego theory in its opposition brief. Although GGW makes a passing argument that it would be futile for ERM to assert alter ego liability, GGW has not adequately established futility.

**IV.   CONCLUSION**

For the foregoing reasons, the Court **DENIES** the motion to strike Enercon's pleading (both the twelfth affirmative defense and counterclaim allegations related to the limitation-of-

14

liability provision).

As for the motion to dismiss or strike ERM's pleading, it is **GRANTED** in part and **DENIED** in part. The motion is granted to the extent ERM's alter ego allegations are insufficient. The motion is otherwise denied. ERM has three weeks from the date of this order to file an amended pleading (*i.e.*, regarding alter ego liability). GGW shall thereafter have three weeks to file a response to the amended counterclaim.

This disposes of Docket Nos. 27 and 28.

**IT IS SO ORDERED**.

Dated: August 18, 2020

_____
EDWARD M. CHEN
United States District Judge