1  NEWMEYER & DILLION LLP
   JOHN VAN VLEAR, CBN 132098
2  John.VanVlear@ndlf.com
   JASON MOBERLY CARUSO, CBN 287809
3  Jason.Caruso@ndlf.com
   895 Dove Street, Fifth Floor
4  Newport Beach, California  92660
   (949) 854-7000; (949) 854-7099 (Fax)
5
6  Attorneys for Defendant and Counter-Claimant
   ERM-West, Inc.

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10



11 | GOLDEN GATE WAY, LLC, a California limited liability company, | CASE NO.:            3:20-cv-03077-EMC |
|---|---|
12 | | **[PROPOSED] ORDER RE JOINT STIPULATION RE APPROVAL OF SETTLEMENT AGREEMENT, ENTRY OF BAR ORDER, ALLOCATION OF SETTLEMENT FUNDS, AND APPLICATION OF PROPORTIONATE SHARE APPROACH** |
| Plaintiff, | |
13 | | |
| v. | |
14 | | |
15 | ENERCON SERVICES, INC., an Oklahoma corporation; ERM-West, Inc., a/k/a Environmental Resource Management, a California corporation; and Does 1-50, inclusive, | *[Filed Concurrently with Joint Stipulation and Declaration of Jason Moberly Caruso]* |
16 | | |
17 | Defendants. | |
18 | | |
19 | AND RELATED CROSS-ACTIONS. | FILE DATE:          May 5, 2020<br>TRIAL DATE SET:  No Date Set |

20
21
22
23
24
25
26
27
28

The joint stipulation regarding approval of settlement agreement, entry of bar order, allocation of settlement funds, and application of proportionate share approach ("Stipulation") of Plaintiff and Counter-Defendant GOLDEN GATE WAY, LLC ("GGW"), Defendant and Counter-Claimant ERM-WEST, INC. ("ERM"), and Defendant and Counter-Claimant ENERCON SERVICES, INC. ("ENERCON") is approved, based on the following stipulated findings:

WHEREAS, commencing in 2009, GGW and its predecessors contracted with ERM to conduct certain environmental response actions ("Work") related to volatile organic compounds ("VOCs") in the subsurface related to dry cleaning operations at 3425 Golden Gate Way, Lafayette, California ("Property");

WHEREAS, GGW is the current owner of the Property;

WHEREAS, also in 2009, GGW filed a federal action in the Northern District of California entitled *Golden Gate Way, LLC v. Stewart et al.*, Case No. 4:09-cv-04458-DMR against various defendants, which case was later dismissed and refiled in 2016 in Contra Costa County Superior Court as *Golden Gate Way v. Monroe*, Case No. CIVMSC16-00775;

WHEREAS, in 2019, GGW filed another action entitled *Golden Gate Way v. Stewart*, Case No. CIV-MSC19-00745, which was consolidated with the *Monroe* action. (Collectively, these cases are referred to herein as the "Prior Cases");

WHEREAS, the Prior Cases were ultimately resolved pursuant to confidential settlement agreements;

WHEREAS, in 2011, the San Francisco Regional Water Quality Control Board adopted Cleanup and Abatement Order No. R2-2011-0088 concerning the Property, naming GGW and others as dischargers;

WHEREAS, by correspondence dated March 12, 2015, GGW thanked ERM for its portion of the Work and terminated its contractual relationship with ERM;

WHEREAS, in May 2020, GGW commenced an action against ERM, ENERCON, and various fictitiously-named defendants, styled *Golden Gate Way, LLC v. Enercon Services Inc., et al.*, United States District Court, Northern District of California, case no. 3:20-CV-03077-EMC

[PROPOSED] ORDER RE JOINT STIPULATION
RE APPROVAL OF SETTLEMENT
3:20-CV-03077-EMC

1  ("Lawsuit");

2      WHEREAS, in the Lawsuit, GGW makes claims for cost recovery and contribution under

3  CERCLA; cost recovery, indemnification, and contribution under the California Hazardous

4  Substance Account Act; private and public nuisance; trespass; declaratory relief; express and/or

5  implied indemnity and/or contribution; and negligence, all related to allegations that ERM and

6  ENERCON failed in their duties as environmental consultants and through their respective Work

7  made the underlying contamination worse by, among other things, spreading it to previously

8  uncontaminated areas;

9      WHEREAS, ERM and ENERCON deny the allegations against them in the Lawsuit, and

10  both have filed counter-claims against GGW;

11      WHEREAS, ERM has asserted a series of defenses that ERM contends reduce and/or

12  eliminate its potential liability, including (1) since GGW is liable under CERCLA Section 107

13  (42 U.S.C. § 9607(a)), thus its recovery is limited to the respective equitable shares of liability (if

14  any) of ENERCON and ERM; (2) ERM's liability cannot exceed $1 million in the aggregate,

15  pursuant to the terms and conditions of its contract with GGW; (3) GGW's claims may be barred

16  by applicable statutes of limitations, given GGW was on inquiry notice of its claims against ERM

17  by March 12, 2015, yet GGW did not file suit until May 5, 2020; (4) GGW's claimed

18  environmental response costs were not incurred consistent with the National Contingency Plan as

19  required for recovery under CERCLA; and (5) GGW cannot establish that ERM breached any

20  applicable standard of care in the course of its Work;

21      WHEREAS, GGW denies these allegations;

22      WHEREAS, to avoid the costs and burdens of continued litigation, GGW and ERM now

23  wish to settle and compromise their respective claims in the Lawsuit, as well as any pending or

24  potential claims regarding ERM's Work, arising out of and/or relating to ERM's Work relating to

25  the Property;

26      WHEREAS, GGW and ERM entered into a settlement agreement with an effective date of

27  March 31, 2021 (the "Settlement Agreement"), a true and correct copy of which is attached to this

28  order as **Exhibit 1**;

[PROPOSED] ORDER RE JOINT STIPULATION
RE APPROVAL OF SETTLEMENT
3:20-CV-03077-EMC

1    WHEREAS, pursuant to the Settlement Agreement, provided all conditions precedent are

2    met, ERM will cause GGW to be paid $385,000;

3    WHEREAS, among other things, the Settlement Agreement contains a condition that the

4    Parties enter into and the Court approve without substantive modification the instant Stipulation,

5    which is to contain the following features: (1) confirmation that Section 6 of the Uniform

6    Comparative Fault Act ("UCFA") -- the proportionate share approach -- is adopted in this

7    Lawsuit as the method for the purpose of determining the appropriate offset for the Settlement

8    Agreement and the settlements in the Prior Cases against GGW's remaining claims in the

9    Lawsuit; (2) Court approval of the Settlement Agreement and confirmation that it is procedurally

10   and substantively fair and was entered into in good faith under federal common law and

11   California Code of Civil Procedure sections 877 and 877.6; (3) entry of a bar order as to any and

12   all claims for contribution or indemnity against ERM arising out of or relating to the facts alleged

13   in the Lawsuit, regardless of when such claims are asserted or by whom, and whether such claims

14   are brought pursuant to any federal or state statute or federal or state common law; and (4) entry

15   of an order that all funds paid to GGW pursuant to the Settlement Agreement will be allocated to

16   GGW's continued investigation and remediation of the Property;

17   WHEREAS, absent the instant Stipulation becoming an order of the Court, ENERCON

18   intends to file CERCLA and state law contribution claims against ERM;

19   THEREFORE, BASED UPON THE PARTIES' STIPULATION, AND FOR GOOD

20   CAUSE APPEARING, IT IS HEREBY ORDERED AS FOLLOWS:

21   1.    That Section 6 of the UCFA is adopted in this Lawsuit as the method for the

22   purpose of determining the appropriate offset for the Settlement Agreement and the settlements in

23   the Prior Cases against GGW's remaining claims in the Lawsuit (i.e., any non-settling party's

24   liability is reduced by ERM's and settling parties in the Prior Cases' proportionate share of

25   liability, not by the amount of the settlement) (see *Acme Fill Corp. v. Althin CD Medical, Inc.*,

26   1995 WL 822664, at \*2-\*3 (N.D. Cal., Nov. 2, 1995));

27   2.    That the Settlement Agreement is procedurally and substantively fair and was

28   entered into in good faith pursuant to California Code of Civil Procedure sections 877 and 877.6,

- 4 -

[PROPOSED] ORDER RE JOINT STIPULATION
RE APPROVAL OF SETTLEMENT
3:20-CV-03077-EMC

taking into account the relevant factors[1] set forth in the California Supreme Court's opinion in *Tech-Bilt, Inc. v. Woodward-Clyde Associates*, 38 Cal.3d 488 (1985) ("*Tech-Bilt*");

3.      That any and all claims for contribution or indemnity against ERM arising out of or relating to the facts alleged in the Lawsuit, regardless of when such claims are asserted or by whom, and whether such claims are brought pursuant to any federal or state statute or federal or state common law, are barred pursuant to Section 6 of the UCFA (see *Tyco Thermal Controls LLC v. Redwood Indus.*, 2010 WL 3211926, at *10 (N.D. Cal., Aug. 12, 2010));

4.      That ERM agrees that it will not file any CERCLA or state law contribution or indemnity claims against ENERCON based on its settlement payment to GGW; and

5.      That all funds that ERM causes GGW to be paid pursuant to the Settlement Agreement are to be allocated to the costs of GGW's continued investigation and remediation of the Property.

IT IS SO ORDERED.

Date:   April 2            , 2021          _____
                                          Hon. Edward M. Chen
                                          United States District Court

---

[1] Those factors include a rough approximation of the total recovery and ERM's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds, a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial, and the absence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants.  (*Tech-Bilt*, 38 Cal.3d at 499.)

# Exhibit 1

## <u>SETTLEMENT AGREEMENT AND RELEASE</u>

This Settlement Agreement ("Agreement") is entered into between ERM-WEST, INC. ("ERM"), on the one hand, and GOLDEN GATE WAY, LLC ("GGW"), on the other.  ERM and GGW may be collectively referred to herein as "Parties" and individually as a "Party."

### RECITALS

A.    Commencing in 2009, GGW and its predecessors contracted with ERM to conduct certain environmental response actions ("Work") related to volatile organic compounds ("VOCs") in the subsurface related to dry cleaning operations at 3425 Golden Gate Way, Lafayette, California ("Property").  GGW is the current owner of the Property.

B.    Also in 2009, GGW filed a federal action in the Northern District of California entitled *Golden Gate Way, LLC v. Stewart et al.*, Case No. 4:09-cv-04458-DMR against various defendants, which case was later dismissed and refiled in 2016 in Contra Costa County Superior Court as *Golden Gate Way v. Monroe*, Case No. CIVMSC16-00775.  In 2019, GGW filed another action entitled *Golden Gate Way v. Stewart*, Case No. CIV-MSC19-00745, which was consolidated with the *Monroe* action.  (Collectively, these cases are referred to in this Agreement as the "Prior Cases.")  The Prior Cases were ultimately resolved pursuant to confidential settlement agreements.

C.    In 2011, the San Francisco Regional Water Quality Control Board adopted Order No. R2-2011-0088 concerning the Property, naming GGW and others, but not ERM, as dischargers.

D.    By correspondence dated March 12, 2015, GGW thanked ERM for its portion of the Work and terminated contractual relationships with ERM.

E.    In May, 2020, GGW commenced an action against ERM, ENERCON SERVICES, INC. ("ENERCON"), and various fictitiously-named defendants, styled *Golden Gate Way, LLC v. Enercon Services Inc., et al.*, United States District Court, Northern District of California, case no. 3:20-CV-03077-EMC ("Lawsuit").  In the Lawsuit, GGW makes claims for cost recovery and contribution under CERCLA; cost recovery, indemnification, and contribution under the California Hazardous Substance Account Act; private and public nuisance; trespass; declaratory relief; implied indemnity and/or contribution; and negligence, all related to allegations that ERM and ENERCON failed in their duties as environmental consultants and through their respective Work made the underlying contamination worse by, among other things, spreading it to previously uncontaminated areas.  ERM and ENERCON deny the allegations against them in the Lawsuit, and both have filed counter-claims against GGW.

F.    To avoid the costs and burdens of continued litigation, the Parties now wish to settle and compromise the Lawsuit and any pending or potential claims arising out of and/or relating to ERM's Work.

## AGREEMENT AND RELEASE

In consideration of the mutual covenants, conditions, promises, and payments contained in this Agreement, and for other good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1.    <u>Stipulation Regarding Approval of Agreement, Entry of Bar Order, Allocation of Settlement Funds, and Application of Proportionate Share Approach</u>.  GGW, ERM, and ENERCON will enter into a stipulation in substantially the same form as **Exhibit A** ("Stipulation").  The Stipulation will jointly request that the Court approve this Agreement and confirm that it is procedurally and substantively fair and was entered into in good faith under federal common law and California Code of Civil Procedure section 877.6.  The Stipulation will also request that Court enter a bar order as to any and all claims for contribution or indemnity against ERM arising out of or relating to the facts alleged in the Lawsuit, regardless of when such claims are asserted or by whom, and whether such claims are brought pursuant to any federal or state statute or federal or state common law.  The Stipulation will also include that all funds paid to GGW pursuant to this Agreement will be allocated to GGW's continued investigation and remediation of the Property pursuant to this Agreement.  Lastly, the Stipulation will confirm that section 6 of the Uniform Comparative Fault Act is adopted in this Lawsuit for the purpose of determining the appropriate offset for the Settlement Agreement and the settlements in the Prior Cases against GGW's remaining claims in the Lawsuit.  The Court's approval of the Stipulation without substantive modification is a condition precedent to this Agreement taking full effect.

2.    <u>Payments</u>.  Conditioned on the Court's approval of the Stipulation, and in consideration for the dismissal *with* prejudice of ERM from all claims asserted by GGW in the Lawsuit, the release, indemnity, and third-party beneficiary provisions set forth below, GGW's commitment to complete the remediation of the Property to the satisfaction of any applicable regulator, and performance of the other covenants contained herein, ERM agrees to cause GGW to be paid the total sum of $385,000 (the "Payment") within thirty (30) days of the Court's approval of the Stipulation.

3.    <u>Dismissals</u>.  Within thirty (30) days of the Court's approval of the Stipulation, GGW and ERM will jointly apply to the court to dismiss, *with* prejudice, their respective claims against each other in the Lawsuit.  The application and the Court's dismissal order will expressly state that the Court retains ancillary jurisdiction to enforce the Agreement and decide any dispute arising from or relating to the Agreement, even after dismissal of the Parties' respective claims and the Lawsuit.

4.    <u>GGW's Release of ERM and Associated Parties</u>.  Upon the Court's approval of the Stipulation without substantive modification and upon ERM's making the Payment, GGW and its predecessors, successors, members, owners, agents, employees, partners, subsequent purchasers, devisees, and transferees (collectively, "GGW and Associated Parties") shall release, hold harmless, and forever discharge ERM and its predecessors, successors, administrators, assigns, agents, insurers – specifically including but not limited to Chartis, Inc., American International Group, Inc., Chartis Specialty Insurance Company, American International Specialty Lines Insurance Company, Commerce & Industry Insurance Company, Inc., Allied

World National Assurance Company, and Aon Risk Services, Inc., AIG  only to the extent of ERM's insurance policies in which ERM is named as an insured (collectively, "ERM's Insurers"), trustees, corporations, affiliates, officers, partners, shareholders, directors, representatives, attorneys, consultants, contractors, and all persons acting on ERM's behalf (collectively, "ERM and Associated Parties") from any and all claims, demands, actions, causes of action, obligations, liabilities, indebtedness, response or remedial costs, breaches of contract, breaches of duty, suits, liens, losses, penalties, fines, costs or expenses, of any nature whatsoever, known or unknown, fixed or contingent, arising out of, based upon, or related to the facts or allegations contained, or which could have been brought, in the Lawsuit and/or arising out of, based upon, or related to ERM's Work. Specifically, ERM's Insurers are being released with respect to any defense or indemnity obligations to GGW on Enercon's cross-claim(s) in the Lawsuit, but not as to any insurance policies where Enercon is named as an insured.  In connection with this release, GGW, on behalf of itself and its Associated Parties, acknowledges and expressly waives any rights under California Civil Code section 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Within thirty (30) days of the Court's approval of the Stipulation, ERM shall record with the Clerk-Recorder of the County of Contra Costa GGW and Associated Parties' release of ERM and Associated Parties in a stand-alone document that will run with the land for the Property, APN 233-051-016-1 in a form substantial similar to **Exhibit B**.

5.     <u>ERM's Release of GGW and Associated Parties</u>.  Upon the Court's approval of the Stipulation without substantive modification, ERM shall release, hold harmless, and forever discharge GGW and Associated Parties, including William H. Peacock, Yolanda M. Peacock, the Peacock Family Revocable Trust, dated 5/17/99, Kyle W. Peacock, Suzanne M. Peacock, the Peacock Living Trust dated 10/12/16, Robert L. Gunter, Jr., Lisa Ann Gunter, and Gunter Global Holdings LLC, a Texas limited liability company, from any and all claims, demands, actions, causes of action, obligations, liabilities, indebtedness, response or remedial costs, breaches of contract, breaches of duty, suits, liens, losses, penalties, fines, costs or expenses, of any nature whatsoever, known or unknown, fixed or contingent, arising out of, based upon, or related to the facts or allegations contained, or which could have been brought, in the Lawsuit and/or arising out of, based upon, or related to ERM's Work.  In connection with this release, ERM, on behalf of itself and its Associated Parties, acknowledges and expressly waives any rights under California Civil Code section 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

6.      <u>Indemnity</u>.  Upon the Court's approval of the Stipulation without substantive modification and upon ERM's making the Payment, GGW shall indemnify and defend ERM and Associated Parties, and each of them, from any and all claims, demands, actions, causes of action, obligations, liabilities, indebtedness, response or remedial costs, breach of contract, breaches of duty, suits, liens, losses, penalties, fines, costs or expenses, of any nature whatsoever, known or unknown, fixed or contingent, including by any by any governmental department or agency, or any third party, related to the Work at the Property and/or the Lawsuit.

7.      <u>ERM's Insurers Are Third-Party Beneficiaries</u>.  ERM's Insurers are expressly agreed to be third-party beneficiaries of this Agreement and are therefore entitled to invoke and enforce it directly for their benefit should the need arise.  The Parties agree and acknowledge that this third-party beneficiary provision is a particularly material term of this Agreement, the absence of which would have resulted in ERM refusing to enter into this Agreement.

8.      <u>No Admission of Liability</u>.  This Agreement is made solely for the purposes of resolving the differences between GGW and ERM addressed herein, and nothing in this Agreement shall be construed as or constitutes an admission of liability by any Party.

9.      <u>Governing Law and Venue</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to its laws regarding choice of applicable law.  Venue is proper only in the United States District Court for the Northern District of California.

10.      <u>Full Capacity and Authority</u>.  Each of the Parties represents and warrants that the person signing this Agreement has full authority and representative capacity to execute this Agreement on behalf of the entity for whom they are purporting to act.  The Parties further represent and warrant that they are the sole and exclusive owner of the claims released herein, and that it has not assigned, transferred, or purported to assign or transfer such claims.

11.      <u>Binding Authority and Effect</u>.  This Agreement, and all the provisions and terms set forth herein, shall be binding upon, and inure to the benefit of, the Parties hereto, GGW and Associated Parties, and ERM and Associated Parties.

12.      <u>Entire Agreement</u>.  This Agreement contains the entire agreement and understanding between the Parties hereto with respect to the matters referred to herein.  No other representations, covenants, undertakings, or other prior or contemporaneous agreements, oral or written, respecting such matters, which are not specifically incorporated herein, shall be deemed in any way to exist or to bind any of the parties.  The Parties acknowledge that they have not executed this Agreement in reliance on any such representations, covenants, undertakings, or agreements.

13.      <u>Benefit of Counsel</u>.  The Parties acknowledge that they have had the benefit of experienced counsel of their own choice and have been afforded an opportunity to review this Agreement with their chosen counsel.  The Parties further acknowledge that each of them, through their respective counsel, participated in the preparation of this Agreement, and it is understood that no provision hereof shall be construed against any party by virtue of the activities of said party or its attorney in the preparation and execution of this Agreement.  The

Parties further acknowledge that they have made such investigation of the facts pertaining to this Agreement and all matters contained herein as they deem necessary, desirable or appropriate.

14.    <u>Severability</u>.  If any provision of this Agreement is deemed invalid or unenforceable, the remaining terms of this Agreement shall remain in full force and effect.

15.    <u>Counterparts</u>.  This Agreement may be executed in multiple counterparts, and all of which together shall be deemed to be a single document.  The Parties agree that this Agreement shall be effective and binding upon the exchange of executed signature pages by facsimile or electronic mail.

16.    <u>Amendments</u>.  This Agreement shall not be modified by any oral representation made before or after the execution of this Agreement.  All modifications to this Agreement must be in writing and mutually signed by the Parties.

17.    <u>Captions and Paragraph Headings</u>.  Captions and paragraph headings used herein are for convenience only.  They are not a part of this Agreement and shall not be used in construing this Agreement.

18.    <u>Attorneys' Fees and Costs</u>.  Each Party shall bear its own costs and attorneys' fees, and any other expenses, related to the Lawsuit.  However, the prevailing party in any legal action later brought to interpret or enforce any aspect of this Agreement shall be awarded all costs and expenses, including reasonable attorneys' fees, related thereto.

19.    <u>Mutual Assurances and Good Faith</u>.  The Parties will exercise their good faith and diligence, and cooperate with every other Party, in carrying out the provisions of this Agreement. The Parties further agree they shall cooperate with each other as reasonably necessary to effect the provisions of this Agreement, and shall each execute and deliver such additional instruments or other documents as the other may reasonably request to accomplish the purposes and intent of this Agreement; provided, however, that nothing in this section shall be deemed to enlarge the obligations of the Parties hereunder or to require either Party to incur any substantial excess expense or liability not otherwise required of it hereunder.

20.    <u>Notices</u>.  Any notice which shall or may be given pursuant to this Agreement shall be in writing and personally served or by private overnight delivery systems, postage prepaid, with an emailed copy to the following address or such other address of which a Party may give written notice:

For ERM:

Marcus Ryan
Secretary, ERM-West, Inc.; Chief Counsel of the Americas & Global Litigation Director
ERM Legal Department
Capitol Tower, 206 East 9th Street, Suite 1700
Austin, TX, 78701
Marcus.Ryan@ERM.com

Courtesy copy to:    John E. Van Vlear, Esq.
                                 Newmeyer & Dillion LLP
                                 895 Dove Street, 5th Floor
                                 Newport Beach, CA 92660
                                 John.vanvlear@NDLF.com

For GGW:

William H. Peacock
Kyle W. Peacock
Golden Gate Way, LLC
3421 Golden Gate Way
Lafayette, California 94595
billpeacock@peacockconstruction.com
kpeacock@peacockconstruction.com

Courtesy copy to:    Jan Greben, Esq.
                                 Greben & Associates
                                 351 Paseo Nuevo, 2nd Floor
                                 Santa Barbara, CA 93101
                                 Jan@grebenlaw.com

21.    <u>Effective Date</u>.  The non-condition precedent aspects of this Agreement shall become effective upon its execution by the last of the Parties to sign ("Effective Date").

IN WITNESS WHEREOF, the Parties have signed their names on the dates indicated, and represent and warrant that they have the requisite authority to enter into this Agreement on behalf of the entity for which they have signed.

ERM-WEST, INC.

By: _____      Date:  March 30, 2021
     Susan Angyal
     Regional CEO for North America, ERM-West, Inc.

GOLDEN GATE WAY, LLC

By: _____      Date:  March 30, 2021
     William H. Peacock
     Manager, Golden Gate Way, LLC

Courtesy copy to:    John E. Van Vlear, Esq.
Newmeyer & Dillion LLP
895 Dove Street, 5th Floor
Newport Beach, CA 92660
John.vanvlear@NDLF.com

For GGW:

William H. Peacock
Kyle W. Peacock
Golden Gate Way, LLC
3421 Golden Gate Way
Lafayette, California 94595
billpeacock@peacockconstruction.com
kpeacock@peacockconstruction.com

Courtesy copy to:    Jan Greben, Esq.
Greben & Associates
351 Paseo Nuevo, 2nd Floor
Santa Barbara, CA 93101
Jan@grebenlaw.com

21.    <u>Effective Date</u>.  The non-condition precedent aspects of this Agreement shall become effective upon its execution by the last of the Parties to sign ("Effective Date").

IN WITNESS WHEREOF, the Parties have signed their names on the dates indicated, and represent and warrant that they have the requisite authority to enter into this Agreement on behalf of the entity for which they have signed.

ERM-WEST, INC.

By: _____    Date:  March 30, 2021
    Name: _____
    Title: _____, ERM-West, Inc.


GOLDEN GATE WAY, LLC

By: _____    Date:  March 30, 2021
    William H. Peacock
    Manager, Golden Gate Way, LLC

# EXHIBIT A

1    NEWMEYER & DILLION LLP
     JOHN VAN VLEAR, CBN 132098
2    John.VanVlear@ndlf.com
     JASON MOBERLY CARUSO, CBN 287809
3    Jason.Caruso@ndlf.com
     895 Dove Street, Fifth Floor
4    Newport Beach, California 92660
     (949) 854-7000; (949) 854-7099 (Fax)
5
6    Attorneys for Defendant and Counter-Claimant
     ERM-West, Inc.

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11   GOLDEN GATE WAY, LLC, a California      CASE NO.:          3:20-cv-03077-EMC
     limited liability company,
12                                           **JOINT STIPULATION RE APPROVAL OF**
                     Plaintiff,              **SETTLEMENT AGREEMENT, ENTRY OF**
13                                           **BAR ORDER, ALLOCATION OF**
     v.                                      **SETTLEMENT FUNDS, AND**
14                                           **APPLICATION OF PROPORTIONATE**
     ENERCON SERVICES, INC., an              **SHARE APPROACH**
15   Oklahoma corporation; ERM-West, Inc.,
     a/k/a Environmental Resource            [*Filed Concurrently with Declaration of Jason*
16   Management, a California corporation; and *Moberly Caruso and [Proposed] Order*]
     Does 1-50, inclusive,
17
                     Defendants.
18
                                             FILE DATE:         May 5, 2020
19   AND RELATED CROSS-ACTIONS.              TRIAL DATE SET:    No Date Set

20

21

22

23

24

25

26

27

28



1    Plaintiff and Counter-Defendant GOLDEN GATE WAY, LLC ("GGW"), Defendant and

2    Counter-Claimant ERM-WEST, INC. ("ERM"), and Defendant and Counter-Claimant

3    ENERCON SERVICES, INC. ("ENERCON"), by and through their respective counsel

4    (collectively, the "Parties"), hereby stipulate as follows:

5        WHEREAS, commencing in 2009, GGW and its predecessors contracted with ERM to

6    conduct certain environmental response actions ("Work") related to volatile organic compounds

7    ("VOCs") in the subsurface related to dry cleaning operations at 3425 Golden Gate Way,

8    Lafayette, California ("Property");

9        WHEREAS, GGW is the current owner of the Property;

10       WHEREAS, also in 2009, GGW filed a federal action in the Northern District of

11   California entitled *Golden Gate Way, LLC v. Stewart et al.*, Case No. 4:09-cv-04458-DMR

12   against various defendants, which case was later dismissed and refiled in 2016 in Contra Costa

13   County Superior Court as *Golden Gate Way v. Monroe*, Case No. CIVMSC16-00775;

14       WHEREAS, in 2019, GGW filed another action entitled *Golden Gate Way v. Stewart*,

15   Case No. CIV-MSC19-00745, which was consolidated with the *Monroe* action.  (Collectively,

16   these cases are referred to herein as the "Prior Cases");

17       WHEREAS, the Prior Cases were ultimately resolved pursuant to confidential settlement

18   agreements;

19       WHEREAS, in 2011, the San Francisco Regional Water Quality Control Board adopted

20   Cleanup and Abatement Order No. R2-2011-0088 concerning the Property, naming GGW and

21   others as dischargers;

22       WHEREAS, by correspondence dated March 12, 2015, GGW thanked ERM for its

23   portion of the Work and terminated its contractual relationship with ERM;

24       WHEREAS, in May 2020, GGW commenced an action against ERM, ENERCON, and

25   various fictitiously-named defendants, styled *Golden Gate Way, LLC v. Enercon Services Inc., et*

26   *al.*, United States District Court, Northern District of California, case no. 3:20-CV-03077-EMC

27   ("Lawsuit");

28       WHEREAS, in the Lawsuit, GGW makes claims for cost recovery and contribution under

JOINT STIPULATION RE APPROVAL OF
SETTLEMENT AGREEMENT
3:20-CV-03077-EMC

CERCLA; cost recovery, indemnification, and contribution under the California Hazardous Substance Account Act; private and public nuisance; trespass; declaratory relief; express and/or implied indemnity and/or contribution; and negligence, all related to allegations that ERM and ENERCON failed in their duties as environmental consultants and through their respective Work made the underlying contamination worse by, among other things, spreading it to previously uncontaminated areas;

WHEREAS, ERM and ENERCON deny the allegations against them in the Lawsuit, and both have filed counter-claims against GGW;

WHEREAS, ERM has asserted a series of defenses that ERM contends reduce and/or eliminate its potential liability, including (1) since GGW is liable under CERCLA Section 107 (42 U.S.C. § 9607(a)), thus its recovery is limited to the respective equitable shares of liability (if any) of ENERCON and ERM; (2) ERM's liability cannot exceed $1 million in the aggregate, pursuant to the terms and conditions of its contract with GGW; (3) GGW's claims may be barred by applicable statutes of limitations, given GGW was on inquiry notice of its claims against ERM by March 12, 2015, yet GGW did not file suit until May 5, 2020; (4) GGW's claimed environmental response costs were not incurred consistent with the National Contingency Plan as required for recovery under CERCLA; and (5) GGW cannot establish that ERM breached any applicable standard of care in the course of its Work;

WHEREAS, GGW denies these allegations;

WHEREAS, to avoid the costs and burdens of continued litigation, GGW and ERM now wish to settle and compromise their respective claims in the Lawsuit, as well as any pending or potential claims regarding ERM's Work, arising out of and/or relating to ERM's Work relating to the Property;

WHEREAS, GGW and ERM entered into a settlement agreement with an effective date of March 30, 2021 (the "Settlement Agreement"), a true and correct copy of which is attached to the concurrently-filed Declaration of Jason Moberly Caruso as **Exhibit 1**;

WHEREAS, pursuant to the Settlement Agreement, provided all conditions precedent are met, ERM will cause GGW to be paid $385,000;

1    WHEREAS, among other things, the Settlement Agreement contains a condition that the

2    Parties enter into and the Court approve without substantive modification the instant stipulation

3    ("Stipulation"), which is to contain the following features: (1) confirmation that Section 6 of the

4    Uniform Comparative Fault Act ("UCFA") -- the proportionate share approach -- is adopted in

5    this Lawsuit as the method for the purpose of determining the appropriate offset for the

6    Settlement Agreement and the settlements in the Prior Cases against GGW's remaining claims in

7    the Lawsuit; (2) Court approval of the Settlement Agreement and confirmation that it is

8    procedurally and substantively fair and was entered into in good faith under federal common law

9    and California Code of Civil Procedure sections 877 and 877.6; (3) entry of a bar order as to any

10   and all claims for contribution or indemnity against ERM arising out of or relating to the facts

11   alleged in the Lawsuit, regardless of when such claims are asserted or by whom, and whether

12   such claims are brought pursuant to any federal or state statute or federal or state common law;

13   and (4) entry of an order that all funds paid to GGW pursuant to the Settlement Agreement will

14   be allocated to GGW's continued investigation and remediation of the Property;

15       WHEREAS, absent this stipulation becoming an order of the Court, ENERCON intends to

16   file CERCLA and state law contribution claims against ERM;

17       THEREFORE, IT IS HEREBY STIPULATED AS FOLLOWS:

18       1.    That Section 6 of the UCFA is adopted in this Lawsuit as the method for the

19   purpose of determining the appropriate offset for the Settlement Agreement and the settlements in

20   the Prior Cases against GGW's remaining claims in the Lawsuit (i.e., any non-settling party's

21   liability is reduced by ERM's and settling parties in the Prior Cases' proportionate share of

22   liability, not by the amount of the settlement) (see *Acme Fill Corp. v. Althin CD Medical, Inc.*,

23   1995 WL 822664, at *2-*3 (N.D. Cal., Nov. 2, 1995));

24       2.    That the Settlement Agreement is procedurally and substantively fair and was

25   entered into in good faith pursuant to California Code of Civil Procedure sections 877 and 877.6,

26   taking into account the relevant factors[1] set forth in the California Supreme Court's opinion in

27

28   _____
     [1] Those factors include a rough approximation of the total recovery and ERM's proportionate
     liability, the amount paid in settlement, the allocation of settlement proceeds, a recognition that a

- 4 -

JOINT STIPULATION RE APPROVAL OF
SETTLEMENT AGREEMENT
3:20-CV-03077-EMC

1  *Tech-Bilt, Inc. v. Woodward-Clyde Associates*, 38 Cal.3d 488 (1985) ("*Tech-Bilt*");

2      3.    That any and all claims for contribution or indemnity against ERM arising out of

3  or relating to the facts alleged in the Lawsuit, regardless of when such claims are asserted or by

4  whom, and whether such claims are brought pursuant to any federal or state statute or federal or

5  state common law, are barred pursuant to Section 6 of the UCFA (see *Tyco Thermal Controls*

6  *LLC v. Redwood Indus.*, 2010 WL 3211926, at *10 (N.D. Cal., Aug. 12, 2010));

7      4.    That ERM agrees that it will not file any CERCLA or state law contribution claims

8  against ENERCON based on its settlement payment to GGW; and,

9      5.    That all funds that ERM causes GGW to be paid pursuant to the Settlement

10  Agreement are to be allocated to GGW's continued investigation and remediation of the Property.

11      IT IS SO STIPULATED.

12  Dated: _____, 2021      NEWMEYER & DILLION LLP

13

14             By:_____

15             John Van Vlear
           Jason Moberly Caruso

16             Attorneys for Defendant and Counter-Claimant ERM-West, Inc.

17

18  Dated: _____, 2021      VAN NESS FELDMAN LLP

19

20             By:_____

21             Brian L. Zagon
           Allison E. McAdam

22             Attorneys for Defendant and Counter-Claimant Enercon Services, Inc.

23

24

25

26  [Cont.]

27  settlor should pay less in settlement than he would if he were found liable after a trial, and the absence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling

28  defendants. (*Tech-Bilt*, 38 Cal.3d at 499.)

JOINT STIPULATION RE APPROVAL OF
SETTLEMENT AGREEMENT
3:20-CV-03077-EMC

1    Dated: _____, 2021            GREBEN & ASSOCIATES

2

3                                           By:_____

4                                               Jan A. Greben
                                                Christine M. Monroe
                                                Attorneys for Plaintiff and Counter-
5                                               Defendant Golden Gate Way, LLC

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION RE APPROVAL OF
SETTLEMENT AGREEMENT
3:20-CV-03077-EMC

# EXHIBIT B

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

Newmeyer & Dillion LLP
895 Dove Street, Suite 500
Newport Beach, CA  92660

Attn:  John Van Vlear, Esq.

APN: 233-051-016-1                    (*Space above this line for Clerk-Recorder's use only*)

## Environmental Release

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, and except for representations and warranties expressly set forth in that certain unrecorded Settlement Agreement with effective date March 30, 2021, Golden Gate Way, LLC ("**GGW**"), for itself, its predecessors, successors, members, owners, agents, employees, partners, subsequent purchasers, devisees, and transferees (collectively, "**Releasor**"), hereby waives, releases, remises, acquits, and forever discharges ERM-West, Inc. ("**ERM**") and its predecessors, successors, administrators, assigns, agents, trustees, corporations, affiliates, officers, partners, shareholders, directors, representatives, attorneys, consultants, contractors, all persons acting on ERM's behalf, and ERM's insurers – specifically including but not limited to Chartis, Inc., American International Group, Inc., Chartis Specialty Insurance Company, American International Specialty Lines Insurance Company, Commerce & Industry Insurance Company, Inc., Allied World National Assurance Company, and Aon Risk Services, Inc. only to the extent of ERM's insurance policies in which ERM is named as an insured -- (collectively, "**Releasee**"), of and from any claims, demands, actions, causes of action, obligations, liabilities, indebtedness, response or remedial costs, breaches of contract, breaches of duty, suits, liens, losses, penalties, fines, costs or expenses, of any nature whatsoever, known or unknown, fixed or contingent (collectively, "**Claims**"), arising out of, based upon, or related to the facts or allegations contained, or which could have been brought, in the suit styled as *Golden Gate Way, LLC v. Enercon Services Inc., et al.*, United States District Court, Northern District of California, case no. 4:20-CV-03077-DMR, arising out of, based upon, or related to ERM's environmental response actions related to volatile organic compounds in the subsurface related to dry cleaning operations at 3425 Golden Gate Way, Lafayette, California ("**Property**"), which Releasor now has or which Releasor may have in the future, whether caused by Releasee or by any other party (collectively, "**Released Matters**").  The Property is more particularly described in Exhibit "A" attached hereto and incorporated herein by this reference.

With respect to the Released Matters, Releasor further acknowledges it has read and considered the provisions of California Civil Code Section 1542, which reads as follows:

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE**

**RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

Releasor hereby expressly waives and relinquishes any right or benefit which Releasor has or may have under California Civil Code Section 1542 as it relates to the Released Matters, and in this connection Releasor acknowledges and hereby expressly agrees that this Release shall extend to all unknown, unsuspected and unanticipated Claims, as well as those which are now disclosed, with respect to the Released Matters.

IT IS HEREBY FURTHER UNDERSTOOD AND AGREED that the acceptance of delivery of this Release by the Releasee shall not be deemed or construed as an admission of liability by any party released by the terms hereof, and each such party hereby expressly denies liability of any nature whatsoever arising from or related to the subject of this Environmental Release and associated unrecorded Settlement Agreement.

Releasor hereby represents and warrants that (a) it owns all of the purported claims, rights, demands, and causes of action that it is releasing by this Environmental Release and that no other person or entity has any interest in said claims, rights, demands or causes of action by reason of any contract or dealing with Releasor, and (b) Releasor has not assigned to any other person or entity all or any part of such claims, rights, demands, or causes of action.

Releasor hereby agrees, represents and warrants that it has had advice of counsel of its own choosing in negotiations for and the preparation of this Environmental Release and associated unrecorded Settlement Agreement, that it has read this Environmental Release or has had the same read to it by its counsel, that it has had the within Environmental Release fully explained by such counsel, and that it is fully aware of its contents and legal effect.

This Environmental Release sets forth provisions, terms, and conditions (collectively "**Terms**") upon and subject to which the Property and every portion thereof shall be held, used, occupied, leased, improved, sold, hypothecated, encumbered, and/or conveyed. Each and every one of the Terms: (a) shall run with the land and/or the Property; (b) shall inure to the benefit of and pass with each and every portion of the Property; and (c) shall apply to and bind every respective successor in interest to land and/or the Property.

_____, 2021          RELEASOR
                                GOLDEN GATE WAY, LLC


                                By:_____

                                Name:_____

                                Title:_____

<u>ACKNOWLEDGMENT</u>

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                              )
COUNTY OF _____        )

On _____, 20__ before me, _____, Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature:_____

(Seal)

-3-

EXHIBIT "A"

Legal Description

PORTION OF LOTS 2, 3, 4 AND 5 BLOCK 8, MAP NO. 1, LAFAYETTE HOMESITES, BY
R.N. BURGESS COMPANY, A PORTION OF THE RANCHO LAGUNA DE LOS PALOS
COLORADOS, FILED ON OCTOBER 6, 1914, MAP BOOK 12, PAGE 266, CONTRA
COSTA COUNTY RECORDS, DESCRIBED AS FOLLOWS:

BEGINNING ON THE SOUTH LINE OF THE COUNTY ROAD KNOWN AS GOLDEN
GATE WAY AT THE NORTHWEST CORNER OF THE PARCEL OF LAND DESCRIBED
IN THE DEED FROM SEWALL SMITH, ET UX, TO JOHN S, MARTINO, ET UX,
RECORDED FEBRUARY 15, 1946, BOOK 882, PAGE 248, OFFICIAL RECORDS;
THENCE FROM SAID POINT OF BEGINNING, ALONG SAID SOUTH LINE, SOUTH 59°
58' 45" WEST, 76.81 FEET; THENCE LEAVING SAID SOUTH LINE, SOUTH 30° 09' 15"
EAST, 116.83 FEET TO THE CENTER LINE OF WALNUT CREEK, AS SHOWN ON SAID
MAP; THENCE ALONG SAID CENTER LINE AS FOLLOWS: NORTH 22° 06'30" EAST,
18.24 FEET, NORTH 55° 32' EAST, 49.85 FEET AND SOUTH 62° 53' EAST, 21.77 FEET;
TO THE WEST LINE OF SAID MARTINO PARCEL (882 OR 248); THENCE NORTH 30°
09' 15" WEST, ALONG SAID WEST LINE, 119.89 FEET TO THE POINT OF BEGINNING.

APN: 233-051-016-1